FILED: JUNE 26, 2008
08CV3672
JUDGE LEFKOW
MAGISTRATE JUDGE SCHENKIER
TDA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A.; | ) ) | |
| BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. RETIREMENT ACCOUNT FUND; | ) ) ) | CIVIL ACTION |
| BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. PENSION FUND; | ) ) | NO: |
| BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. HEALTH AND WELFARE FUND; | ) ) ) | JUDGE: |
| BOARD OF TRUSTEES of the JOINT APPRENTICESHIP COMMITTEE FUND of the PLUMBING & HEATING INDUSTRY OF LAKE AND McHENRY COUNTIES; and The INDUSTRY ADVANCEMENT FUND; | ) ) ) ) ) ) | MAGISTRATE JUDGE: |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| MANNION PLUMBING, INC., an Illinois Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Now come Plaintiffs, the BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION

NO. 93 U.A. *et al.*, by and through their attorneys, JOHNSON & KROL, LLC, complaining of

the Defendant, MANNION PLUMBING, INC. (hereinafter referred to as "MANNION") and

allege as follows:

1.  This action arises under Section 502 of the Employee Retirement Income Security Act

   (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations

   Act.  (29 U.S.C. § 1132 and 185).  Jurisdiction is founded on the existence of federal

questions arising thereunder.

2.    The BOARD OF TRUSTEES of the PLUMBERS' RETIREMENT ACCOUNT FUND, LOCAL 93, The BOARD OF TRUSTEES of the PLUMBERS' PENSION FUND, LOCAL 93, The BOARD OF TRUSTEES of the PLUMBERS' HEALTH AND WELFARE FUND, LOCAL 93,  and the BOARD OF TRUSTEES of the JOINT APPRENTICESHIP COMMITTEE FUND of the PLUMBING & HEATING INDUSTRY OF LAKE AND McHENRY COUNTIES are authorized to administer the PLUMBERS' RETIREMENT ACCOUNT FUND, LOCAL 93, The PLUMBERS' PENSION FUND, LOCAL 93, The PLUMBERS' HEALTH AND WELFARE FUND, LOCAL 93 and the JOINT APPRENTICESHIP COMMITTEE FUND of the PLUMBING & HEATING INDUSTRY OF LAKE AND McHENRY COUNTIES, respectively, (hereinafter referred to as the "TRUST FUNDS"), which receive contributions from numerous employers pursuant to Collective Bargaining Agreements between the employers and the PLUMBERS' ASSOCIATION, LOCAL UNION 93, U.A., (hereinafter referred to as the "UNION"), and therefore, are multi-employer plans under 29 U.S.C. § 414(f).  The Trust Funds are administered at 31655 North U.S. Highway 12, Volo, Illinois 60073.  Therefore, venue is proper in the Northern District of Illinois, Eastern Division.

3.    The BOARD OF TRUSTEES of the INDUSTRY ADVANCEMENT FUND is authorized to administer the INDUSTRY ADVANCEMENT FUND (hereinafter referred to as "INDUSTRY FUND").

4.    The UNION is the bargaining representative of MANNION'S bargaining unit employees.

2

5.   The Defendant MANNION is an employer engaged in an industry affecting commerce which entered into a Subscription Agreement whereby it agreed to be bound by the provisions of the Collective Bargaining Agreement negotiated between the UNION and the Lake and McHenry Counties Plumbing & Heating Association for all times relevant to this action. (Copies of these Agreements are attached hereto as Exhibits 1 and 2).

6.   Through the agreements referred to in paragraph 5, the Defendant MANNION also became bound by the provisions of the Agreements and Declarations of Trust which created the Trust Funds (hereinafter referred to as "Trust Agreements").

7.   Pursuant to the provisions of the Collective Bargaining Agreements, the Defendant MANNION is required to make monthly reports of hours worked by Covered Employees (hereinafter referred to as "monthly Contribution Reports") and pay contributions to the TRUST FUNDS and the INDUSTRY FUND for each hour worked at the rate specified in the Collective Bargaining Agreement and the Trust Agreements. The monthly reports and contributions during all times relevant were due on or before the 15th day of the calendar month following the calendar month during which the work was performed.

8.   Pursuant to Section 502(g)(2) of ERISA, and the provisions of the Collective Bargaining Agreement and Trust Agreements, employers who fail to submit their monthly Contribution Reports and contributions to the TRUST FUNDS on a timely basis are responsible for the payment of liquidated damages equal to 10% of the amount unpaid and interest at the rate of 1% per month for each month that contributions remain unpaid, plus any reasonable attorneys fees and costs of maintaining suit.

9.      Pursuant to the provisions of the Collective Bargaining Agreement and Trust Agreements, employers who fail to submit their monthly Contribution Reports and contributions to the INDUSTRY FUND on a timely basis are responsible for the payment of liquidated damages equal to 10% of the amount unpaid and interest at the rate of 1% per month for each month that contributions remain unpaid, plus any reasonable attorneys fees and costs of maintaining suit.

10.     Defendant MANNION has consistently submitted untimely Contributions Reports and the associated payments during the period of March, 2007 through the present. (Delinquency Report is attached hereto as Exhibit 3).

11.     Defendant MANNION has failed to submit the required contribution payments for the months of September, October, November and December of 2007, as well as January of 2008, totaling approximately $15,722.56.

12.     MANNION has further failed to submit Contribution Reports or the associated contribution payments for the months of April and May of 2008.

13.     Because of MANNION'S failure to submit contribution payments in a timely manner, liquidated damages and interest charges have accrued for the period of March, 2007 through March of 2008 in the amount of $3,559.06 and for the month of April and May of 2008 in an unknown amount.

14.     MANNION is required to submit the missing Contribution Reports, together with the associated contributions payments, plus liquidated damages and interest charges.

15.     Pursuant to the Collective Bargaining Agreement, MANNION is required to deduct UNION dues from its employee's paychecks (called working dues) and remit payment of those dues to the UNION.

16.    Defendant MANNION owes the UNION, the INDUSTRY FUND, and the TRUST FUNDS approximately $19,281.62, which represents known contributions, working dues, liquidated damages and interest charges.

17.    Plaintiffs have been required to employ the undersigned attorneys to collect the monies that may be found to be due and owing from the Defendant.

18.    Plaintiffs have complied with all conditions precedent in bringing this suit.

19.    Defendant is obligated to pay the audit fees, attorney fees, and court costs incurred by the Plaintiffs pursuant to the Collective Bargaining Agreement, Trust Agreements and 29 U.S.C. §1132(g)(2)(D).

**WHEREFORE**, Plaintiffs pray:

A.    That Judgment be entered in favor of Plaintiffs and against Defendant MANNION in the Aggregate amount of $19,281.62;

B.    That Defendant MANNION be ordered to submit all missing Contribution Reports and that judgment be entered in favor of Plaintiffs and against Defendant MANNION for whatever contributions, liquidated damages, interest and UNION dues are found to be due and owing in addition to the amount referred to in paragraph A above;

C.    That Defendant MANNION be enjoined from committing further violations under the terms of the Collective Bargaining Agreement, Trust Agreements and ERISA;

D.    That Defendant MANNION be ordered to pay the reasonable audit fees, attorney fees and costs incurred by the Plaintiffs in bringing this suit pursuant to the Collective Bargaining and Trust Agreements, and 29 U.S.C. §1132(g)(2)(D); and

E.    That Plaintiffs have such other and further relief as the Court may deem just and equitable all at the Defendant's cost, pursuant to 29 U.S.C. §1132(g)(2)(E).

Respectfully Submitted,

JOHNSON & KROL, LLC

By: /s/ Joseph E. Mallon - 6280529
One of Plaintiffs' Attorneys

JOHNSON & KROL, LLC
208 South LaSalle Street, Suite 1602
Chicago, Illinois 60604
(312) 372-8587

08CV3672

JUDGE LEFKOW

MAGISTRATE JUDGE SCHENKIER

EDA

## SIGNATORY EMPLOYERS

For good consideration, the undersigned Employer hereby subscribes to and adopts the foregoing Collective Bargaining Agreement between PLUMBING AND HEATING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES and JOURNEYMEN PLUMBERS, LOCAL UNION NO. 93, and agrees to abide by, and be bound by all of the terms and conditions thereof, and by any amendments thereto, and hereby ratifies and accepts said Collective Bargaining Agreement and the terms and conditions thereof as fully and completely as if the undersigned had been an original party thereto.

Dated this _15_ day of _June_ 19_95_

_Mannion Plumbing, Inc._
Firm Name

By: _Juliann Mannion Pres._
Title

_549 W. Division_
Street Address

_Chg_      _Ill._      _60651_
City      State      Zip

Telephone _773 686-6470_

Indicate if your firm is a ( ✓ ) Corporation
           ( ) Partnership
           ( ) Sole owner or
              proprietorship

Workman's Compensation

Insurance: _Leonardi Insurance_
Name of Carrier

_PP038773_
Policy Number

Effective Dates

Illinois Unemployment Compensation

Registration No._____



EXHIBIT

tabbies

1

08CV3672
JUDGE LEFKOW
MAGISTRATE JUDGE SCHENKIER
EDA

AGREEMENT

BETWEEN

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION
OF
LAKE AND MCHENRY COUNTIES





LAKE COUNTY AND MCHENRY COUNTY JOURNEYMEN
PLUMBERS LOCAL UNION 93 OF THE UNITED
ASSOCIATION

JUNE 1, 2005
THROUGH
MAY 31, 2008

EXHIBIT
2

## PREFACE

THE CULMINATION OF THIS AGREEMENT BETWEEN THE PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION AND PLUMBERS LOCAL UNION 93 OF LAKE AND MCHENRY COUNTIES, ILLINOIS, IS A CONCENTRATED EFFORT BY BOTH PARTIES TO MEET THE CHALLENGE OF THE ECONOMIC AND SOCIAL CHANGES THAT HAVE OCCURRED IN RECENT YEARS

AS A RESULT OF THE CHANGES THAT NOW CONFRONT OUR INDUSTRY, THIS AGREEMENT ATTEMPTS TO MEET THOSE CHANGES BY RESTRUCTURING WHAT HAS BEEN TRADITIONALLY ACCEPTED IN THE PAST.

THE OBLIGATIONS BY ALL PARTIES TO THIS AGREEMENT AS TO WAGES, FRINGE BENEFITS, HOURS OF WORK AND OVERTIME APPLIES ONLY WITHIN THE JURISDICTION OF LOCAL 93 WITH THE EXCEPTION OF THE FIFTY-FIFTY AGREEMENTS CONCERNING WASTE AND/OR WATER TREATMENT FACILITIES WITH PIPEFITTERS LOCAL UNION 597 OF CHICAGO ILLINOIS WITH WHOM WE SHARE JURISDICTION. IN WHICH CASE THE LOCAL 597 WORKING AGREEMENT AS TO HOURS OF WORK AND OVERTIME WILL APPLY. THIS AGREEMENT WILL ALSO APPLY TO ANY AND ALL WORK OUTSIDE LAKE AND MCHENRY COUNTIES ILLINOIS, WHOSE JURISDICTION IS ASSIGNED BY THE UNITED ASSOCIATION TO OTHER PLUMBER AND/OR PIPEFITTERS LOCAL UNIONS.

## INDEX

| ARTICLE | PG |
|---|---|
| I. RECOGNITION | 4 |
| II. UNION SECURITY | 5 |
| III. CONTRACTOR'S STANDARDS | 5 |
| IV. ARBITRATION | 7 |
| V. WORK JURISDICTION | 9 |
| VI. SAFETY | 10 |
| VII. CONDITIONS OF WORK | 10 |
| VIII. MAINTENANCE WORK | 24 |
| IX. COVERED WORK | 24 |
| X. AGREEMENT DATES | 24 |

| APPENDIX I – WORK LIST | 25 - 27 |
| APPENDIX II – WAGE & FRINGES | 28 - 30 |

LETTERS OF UNDERSTANDING

| A. WORKING CONTRACTOR | 31 |
| B. SHOP TIME  SHOW UP TIME  TRAVEL TIME | 32 |
| E. METAL TRADESMAN | 33 |
| F. SERVICE WORKDAY | 34 |
| G. MONDAY THROUGH SUNDAY WORKWEEK | 35 |
| H. BACKING & ACCESSORIES | 36 |
| I. CLEAN CARD POLICY | 37 |
| J. EDUCATION COMMITTEE | 37 |
| K. SERVICE/REPAIR TRAINING | 38 |

# AGREEMENT

This Agreement is made by and between PLUMBING, HEATING, COOLING CONTRACTORS' ASSOCIATION OF LAKE AND MCHENRY COUNTIES, a not-for-profit corporation of Illinois, for and on behalf of Contractors who are duly licensed by law to engage in the plumbing contracting business, as defined by the State of Illinois, Department of Public Health, (hereinafter designated as "Contractor") and JOURNEYMEN PLUMBERS LOCAL UNION 93, of Lake and McHenry Counties, in the State of Illinois composed of competent mechanics duly authorized by law to install all plumbing work (hereinafter designated as "Union").

This Agreement is entered into in the interest of public economy, to prevent strikes and lockouts; to facilitate just and peaceful adjustments of disputes and grievances; to enter into contractual relations with respect to wages, hours of work and other conditions of employment to be faithfully observed by all parties to this Agreement.

## ARTICLE I
## RECOGNITION

Section 1. The Union is the duly recognized collective bargaining agency in the jurisdiction of Lake and McHenry Counties in the State of Illinois. The Association is the duly recognized bargaining agent for its Employer members within this jurisdictional area.

The Union shall not be prohibited or prevented from engaging in collective bargaining in good faith with a non-signatory employer.

Section 2. It is understood and agreed by and between the parties that contractors, as defined by the State of Illinois, Department of Public Health, not members of the Association may become parties signatory to this Agreement and shall thereupon be bound by all the terms and conditions of this Agreement and any Amendments hereto as fully and completely as if an original party hereto.

4

Section 3. The Union agrees that if during the life of this Agreement it grants to any other Employer in the Plumbing Contracting Industry, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement, and the Union shall immediately notify the Employer Association of such changes or alterations. The Contractor agrees that the Employers will not employ an Employee under the jurisdiction of this Agreement under terms and conditions less favorable than provided for in this Agreement.

Nothing contained herein shall prohibit or prevent the Union from placing plumbers with any person, firm or corporation, which has signed a National Agreement with the United Association of Plumbers and Pipefitters.

## ARTICLE II
## UNION SECURITY

Section 1. All Employees who are members of the Union on the effective date of this Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement. All other employees shall be required to become and remain members of the Union as a condition of employment from and after the Seventh (7th) day following the dates of their employment, or the effective date of this Agreement, whichever is later.

## ARTICLE III
## CONTRACTOR'S STANDARDS

Section 1. Every Employer must comply with the Illinois State Laws governing the work to be performed, and shall provide the following information to Plumbers Local 93:

A.  A copy of an Illinois Plumbing Contractor's License

B.  A copy of a current certificate of worker's compensation to be submitted annually on June 1st and changed based on any change in insurance carrier or increase or reduction in the amount of coverage.

5

C. Every Employer signatory to the Local 93 Agreement for more than one (1) year shall have a Wage and Surety Bond on file with the Union or an irrevocable Letter of Credit payable to the Union and the Funds in the amount of $5,000.00 per employee.

Number of employees shall be based on the following calculation. (Prior years contribution hours ÷ 1500 = Number of employees)

Working Contractors shall be excluded from the calculation. Bonding requirements will be waived for employers employing less than two (2) employees. The Bond Amount shall be capped at $60,000.00.

Section 2. Any member of this Local Union or any other U.A. Local, or any licensed Plumber entering business as a Plumbing Contractor in Lake & McHenry Counties who becomes signatory to this Agreement shall state his intention in writing to the Local 93 Business Office and verify that he is meeting the Contractor Standards as set forth in Section I.A and B. Local 93 shall notify the Contractors Association in writing when a new Employer becomes signatory to this agreement.

Section 3. Contractors may work with the tools of the trade provided that he shall pay into Health & Welfare Fund, Pension Fund, Retirement Fund, Apprentice Training and Plumbing & Mechanical Contractors of Northern Illinois Industry Promotion Fund for forty (40) hours and the Local 93 working assessment a minimum of thirty-two (32) hours per week at the rate established for each such fund. Working Contractors in compliance with Article III, Section I A & B, shall be provided medical insurance and life insurance for themselves and dependents at a rate established by the Health & Welfare Trustees and in compliance with Federal and State Legal requirements concerning Employer participation in an Employee Benefit Plan.

See Letter of Understanding "A".

## ARTICLE IV
## ARBITRATION

Disagreements or disputes and all interpretations of this Agreement shall be settled by arbitration. There shall be no abandonment of work during the pendency of such arbitration proceedings.

Section 1. A Joint Arbitration Board shall be established consisting of three (3) members from each party hereto. Within a period of thirty (30) days after the execution of this Agreement the Joint Arbitration Board shall meet to elect a Chairman and Secretary and transact any business that may properly come before the board.

Section 2. The Board shall meet upon forty-eight (48) hours written notice to the other by either of the parties hereto. Four (4) members of the Board, two (2) from each of the parties hereto, shall constitute a quorum for the transaction of business, but each party shall have the right on a roll call or vote to cast a full vote for its representatives and it shall be counted as though all were present and voting.

Section 3. The Board shall have jurisdiction to settle all disputes and grievances that might arise between Employers and Employees and carry out the terms of this Agreement. It shall have power to impose such penalties from time to time, as it may deem advisable.

Section 4. In the event of a dispute or grievance arising between the parties hereto, such dispute or grievance shall be presented in writing to the Chairman of the Joint Arbitration Board, who shall within forty-eight (48) hours call a meeting of the Board in an effort to adjust the same. The Board shall hear evidence, summon necessary witnesses and render a decision which shall be final and binding on the parties hereto.

In the event the Board fails to reach an agreement, they will within forty-eight (48) hours mutually appoint a third party to hear the dispute or grievance and render a decision which will be final and binding on all parties to this Agreement.

In the event the Board fails to reach agreement on a third party, the dispute or grievance shall be referred to the American Arbitration Association.

Section 5. The Joint Arbitration Board shall have full power to enforce this Agreement, to summon Employers or Employees covered by this Agreement against whom charges or violations have been preferred, and to summon Employers or Employees covered by this Agreement to testify in the case at issue. Such summons shall be served by registered mail by the Secretary of the Joint Arbitration Board. Failure of the Employer or Employee to respond as to principals or witnesses, except for valid reasons, shall subject him or them to the payment of the cost incurred by the Joint Arbitration Board. All expenses shall be equally shared by both parties.

Failure to respond to a second notice without good or sufficient cause shall not in any way interfere with the case and rendering a decision as above provided. The proceedings with the case and rendering a decision as above provided.

Section 6. Tenure in office as a member of the Joint Arbitration Board shall be for the Life of this Agreement. In case a vacancy occurs on the Board, a successor shall be appointed or elected by the party to this Agreement which originally appointed him.

Section 7. The parties hereto agree the respective members of the Joint Arbitration Board shall be indemnified as Joint Arbitration Board members against judgment, court costs and attorney fees incurred and/or paid by such Joint Arbitration Boards members in defending any suit or legal proceeding brought against such Joint Arbitration Board members in their representative capacity to enforce any liability or alleged liability on account of any loss, claim, or damage if established against the Joint Arbitration Board shall constitute a valid and collectible loss sustained by either appropriate party under the terms of this agreement. In the event of any other suit or action against a member of the Joint Arbitration Board for or on account of acts performed pursuant to the authority provided for in this Agreement, such Joint Arbitration Board may draw upon any funds which are in its hands or under its control subject to such rules and provisions as the Joint Arbitration Board may establish relating to the disposition of such funds.

In consideration of such indemnity, the Joint Arbitration Board members shall promptly give notice to such Joint Arbitration Board and the appropriate Local Union and Employer representatives of the institution of any such suit or legal proceedings. At the request of any party to this Agreement, any Joint Arbitration

8

Board members shall furnish copies of all pleadings and other papers therein and at the election of either Management and/or Labor shall permit either or both parties to conduct the defense of such suit or legal proceedings in the name of such Joint Arbitration Board member or members shall give all reasonable information and assistance other than pecuniary which shall be deemed necessary to the proper defense of suit or legal proceeding.

Any Joint Arbitration Board members acting without the scope of the authority conferred by this Agreement or as individuals of fraudulent or illegal conduct shall not be indemnified under this Section.

Duly authorized representatives of any party or Joint Arbitration Board shall be allowed to visit any job and/or any employer's place of business during working hours to interview the employer or the employer's duly authorized representative or the employees, but such visit shall in no way hinder the progress of the work being performed.

## ARTICLE V
## WORK JURISDICTION

Section 1. Employees covered by this Agreement shall place in position, install and connect all materials, appurtenances, devices, fixtures, equipment and accessories constituting the jurisdictional work of the Union by either area practices and/or National Building Trade Agreements with the United Association.

Section 1a. It is understood that the settlement of jurisdictional disputes with other Building Trades organizations shall be adjusted in accordance with the procedure established by the plan for settlement of jurisdictional disputes in the construction industry or any successor agency.

Section 2. Employees covered by this Agreement shall do all the laying out, cutting and drilling of all holes, chases and channels, the setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, conduits and boxes used in connection with work falling under the jurisdiction of the Union.

9

Section 3. Contractors securing work to be performed under the terms of this Agreement, which has been assigned to employees not members of Plumbers Local Union 93, shall notify the Union Office within forty-eight (48) hours after securing such work. Contractors failing to notify the Union Office may be summoned before the Joint Arbitration Board for disciplinary action.

## ARTICLE VI
## SAFETY

The Employers agree to make all reasonable provisions for the safety and health of their employees during the hours of their employment. The Union agrees to promote in every way possible the realization of the responsibility of the individual employee with regard to preventing accidents to himself and to his fellow employees during the hours of their employment. Employers may, as a condition of employment, require Local 93 members to have completed a 10-hour OSHA Safety training class.

Section 1. It shall be the duty of the employee in charge to report personally to both the Union and the Employer accidents which may occur on the job where they are employed. Employers shall carry acceptable workmen's compensation, public liability and unemployment insurance.

Employees covered by this Agreement, who as a result of injuries received on the job, are required to obtain medical aid for such injuries, shall be reimbursed for said time spent in obtaining medical aid. If the Employer's doctor or Employer's insurance company doctor makes available to the injured employee evening or non-working hours for further aid or treatment of an injury, which will not cause a loss of regular time, then said employee shall arrange to have all further visits to the doctor scheduled for non-working hours.

## ARTICLE VII
## CONDITIONS OF WORK

Section 1. The Union shall not recognize and/or participate in third (3rd) party strikes or work stoppages involving jurisdictional disputes, except for economic reasons involving area standards, or conditions affecting safety or health.

10

Section 1a. Eight (8) hours per day and five (5) days, or ten (10) hours per day and four (4) days between 6:00 a.m. and 6:00 p.m. shall constitute the "Regular" workday. Forty (40) hours Monday through Saturday shall constitute the "Regular" work week. The "Regular" workday and "Regular" work week may vary for employees within a shop. "Regular" hours worked Monday through Saturday up to and including forty (40) hours shall be paid at the base rate. Employees required to work outside the regular workday or week or in excess of forty (40) hours shall be paid one and one half times the base rate. Double the base rate shall be paid for all work performed on Sundays and legal holidays as hereinafter defined. (See Letter of Understanding "F")

Hours worked in excess of eight (8) hours per day and Saturdays or Sundays to make a forty (40) hour work week, shall be optional on the part of the Employee, and Employers shall not take punitive action against the Employee for refusing to work.

Section 1b. A special Monday through Sunday work week may under the terms of this agreement be instituted by mutual agreement between the union member, the employer and the user as herewith set forth and restricted to not more than one (1) user in any forty (40) hour work week. (See Letter of Understanding "G")

Hours worked Monday through Sunday shall be paid at the base rate plus ten (10) percent and not less than a forty (40) hour work week. Hours worked in excess of forty (40) hours shall be paid at double the base rate except Easter Sunday and all legal holidays, as hereinafter defined, shall be paid at triple the base rate.

Section 1c. In addition whereby two (2) or more members agree and are scheduled to work a split four (4) day, forty (40) hour work week on a continuing basis, the Employees shall be rotated so as to have equal weekend time off.

Shift time assignments shall be paid at a 10% premium or no less than the highest hourly wage and conditions of any U.A. Member working on that shift. All shifts shall not be for less than forty (40) hours work in the work week. All shift work shall be reported to the Union before commencing. Contracts awarded prior to 9-1-05 will be reviewed to determine the applicable rate by a joint Labor and Management Committee.

Section 1d. In addition to wages, fringe benefits, withholding taxes, and Union work assessments, the Contractor should include a separate

11

category to be designated non-production payments for such items as show-up time, where required by Article 7, Section 2 of this working agreement.

Section 1e.  Travel time shall not be required to be paid to Employees who furnish their own transportation when working outside the jurisdiction of Local Union 93 and within fifty (50) miles of the Local 93 Union Hall.  When required to stock the truck with tools, material, equipment and leave before the regular starting time and return after the regular starting time, the Employee shall be paid in accordance with Article 7, Section 1a

Employees assigned to work outside the fifty (50) mile free travel zone shall receive travel time at the straight time hourly rate between the fifty (50) mile limit and the jobsite, based on 30 m.p.h.

See Letter of Understanding "D".

Section 1f.  It is the intention of the parties to the Agreement that offers by Employers of overtime or other benefits for the purpose of "pirating" Employees covered under this Agreement shall be deemed to be a violation of this Agreement and such Employers shall be subject to the sanctions as set forth in Article IV.

Section 2.  Any Employee covered by this Agreement reporting for work upon order of any Employer who is party to this Agreement, and not put to work for any reason (*) except fire accidents, other unavoidable causes, or failure to dress properly for the type of construction on which such Employee will be working shall receive two (2) hours pay as expense reimbursement.

*Any employee covered by this Agreement reporting for work upon order of any Employer who is party to this Agreement and not put to work because of weather conditions, shall receive one (1) hour of show-up time pay for the time lost unless he has been previously notified not to report to work.  In order to obtain the one (1) hour pay the Employee must remain on the job for that period of time, if directed to do so by the Employer.

12

Section 3.  If an Employee is to be laid off or discharged except for cause, he shall be so notified and paid off in full, at least one-half (1/2) hour before the established quitting time.  Should the Employer require the Employee to be laid off or discharged to receive his check at the office of the Employer, the Employee shall be allowed two (2) hours at regular pay.  Should the Employee not be paid promptly upon arrival at the office of the Employer, he shall be paid at the regular hourly rate of pay for all time in waiting.

Employees covered by this Agreement, who leave an Employer of their own volition, may wait until the regular pay day of the current week to collect the wages due.

Employees covered by the Agreement shall not work under any of the following conditions:

1.  Where the equipment, tools, ladders and/or job conditions are judged to be unsafe by a properly designated representative of the Union and/or are not in conformity with the safety standards contained in the Occupational & Safety Health Act.

2.  For any Employer who does not carry acceptable Worker's Compensation Insurance and State Unemployment Insurance.  (A copy of these coverages should be on file in the Union Office.)

3.  For Employers who do not give receipts for withholding of Social Security, Federal and State Income Taxes and any other deductions required by this Agreement.

4.  For more than one (1) Employer at the same time.

5.  No Journeyman and/or Apprentice shall furnish his vehicle for any purpose other than to transport himself to and from the job.

6.  No Journeyman shall be permitted to subcontract or lump the installation of any work under the jurisdiction of the Local Union.  Both parties violating this Section shall be penalized by their respective organization through the Joint Arbitration Board.

13

7. No Employee shall be permitted to work after regular working hours or on Saturday, Sunday or on holidays as a self-employed Plumbing Contractor. Violators may be tried before the Local Union Executive Board in accordance with the procedures of the United Association Constitution.

Section 4. The following days, or the day on which they are legally celebrated, shall be recognized as legal holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. No work shall be done on these days, except to protect life and property.

Section 5. Shifts will not be worked without prior notification of the Union Office. However, when shift work is performed, it must continue for a period of not less than forty (40) hours work in a work week, as defined in Article 7, Section 1a. If only two (2) shifts are worked, the second shift may be for any designated eight (8) hour period beginning after the conclusion of the first shift; however, the starting time selected for the second shift must remain the same for the duration of the shift.

Section 6. Employee members of each Local shall be paid once each week, on the job, not later than the quitting time on the regular established pay day of the Employer. In no event, may the regular pay day be more than four (4) working days after the day on which the Employer's work week ends. If the regular payday should fall on the same day as a legal holiday (as set forth in this Agreement), the Employee shall be paid on the work day immediately preceding the legal holiday.

No member shall accept wage payment in cash, but shall only accept by check, so that a full and complete record of Wages, Withholding, Taxes, Social Security, Pension and Welfare contributions and any other deductions required by this Agreement will be readily available.

Any Employer who fails to have sufficient funds in the bank to cover all pay checks issued to Employees will be denied the privilege of paying by the normal payroll checks, and must pay all future payroll by certified check until such time as the Union gives the Employer written notice that it is satisfied that the Employer is financially responsible and, therefore, able to resume payment of payroll by non-certified check.

14

Section 7. The Employer shall comply with all plumbing codes of the various municipalities in which the work is being installed. Any violations of said plumbing ordinances shall be reported to the office of the Business Manager of the Local Union in whose jurisdiction the work is being performed by the Employees working on the job.

It will not be considered a violation of this agreement for any Local 93 member to adhere to the local ordinances and/or the Illinois Plumbing License Law which protects the public against unsanitary installations.

Section 8. The Employers agree to not sublet, lump or contract for labor any work which comes under the jurisdiction of the Local Union. Such sub-letting, lumping or contracting shall be considered a violation of this Agreement and summarily dealt with, in accordance with the grievance procedures of this Agreement.

The Employer agrees that in the event the Employer sub-contracts any work coming under the provisions of this Agreement at the site of construction to any other person or firm, the Employer shall subcontract the same to another Employer who is party to this Agreement. (A refusal of Employees to render services upon a job site where this sub-section is violated, shall not be a violation of this Agreement for any purpose, nor shall such refusal be cause for discharge.)

Section 9. All expenses incurred by an Employee in telephoning or otherwise connected with his work shall be paid by the Employer.

Section 10. The Employee shall furnish a pocket level, small pliers, and ruler; all other tools shall be furnished by the Employer. No Employees shall be allowed to carry tools or material belonging to the Employer in the Employee's vehicle. The Employer may keep a record of his tools to guard against loss or damage to his equipment. Employees who receive tools from their Employers and for which a receipt is given to the Employer, shall be responsible for such tools and make good for any tools lost by said Employee. The Union will require the Employees to replace or pay for lost or missing tools furnished by their Employer and for which the latter holds a receipt from his Employee. The Employer shall be required to mark their tools in a readily identifiable manner. Any tools not marked as the Employers shall be considered in violation of the Collective Bargaining Agreement.

15

When Welders are employed on the job, the Employer shall furnish protective clothing, which shall include sleeves, aprons and gloves, welding hoods, goggles, etc. The Welders shall be held responsible for this clothing, except for normal wear and tear or if stolen from the Employer's job location.

Section 11. All sizes of pipes shall be cut and threaded and/or welded and fabricated by Employees covered by this Agreement. There shall be no restrictions on the use of power equipment. Where it is impractical or a hardship to cut, thread, or weld pipe on the job in the opinion of the Employer involved, such pipe may be cut, threaded, or welded and fabricated in the shop. Such cutting, threading, welding and fabrication shall be performed by members of the Bargaining Unit if it is to be installed in the Local 93 jurisdiction.

All pipe, hanger rod and fabricated piping of any size, which is cut in the shop of the Employer, or in any approved Employer's shop covered by this Agreement shall be labeled by the Journeyman performing the work. The Journeyman who obtains the labels from the Office of the Business Manager of the Local Union shall be held accountable for said labels.

Section 12a. All members of the Union who work on jobs that extend into approved overtime shall be given preference to work the overtime.

Section 12b. The union shall require Journeymen to obtain a referral slip from the Local 93 Office when changing jobs and present same along with a copy of a valid Plumbing License to his new Employer. Employers, whose work or place of Business is located within the geographic jurisdiction of Local 93, shall be required to obtain the referral slip from the Employer and return it to Local 93. Both parties violating this Section may be penalized by their respective organization through the Joint Arbitration Board. The Union shall refer applicants for employment according to the following minimum standards:

1. The selection of applicants for referral to any job shall be on a non-discriminatory basis and shall not be based on or in any way affected by the applicant's race, color, creed, sex or age or in any way affected by Union Membership, By-Laws, Rules, Regulations, or Constitution Provisions, or any other aspect or obligation of Union Membership, Policy or Requirement.

2. The Employer shall have the sole and exclusive right of accepting or rejecting applicants referred by the Union.

3. The selection, hiring, supervision and training of all Apprentices shall be subject to the rules and control of the Joint Apprenticeship Committee established in the Local 93's jurisdiction and further shall be subject to the provisions of Article VII, Section 12-b-1 of this Agreement.

Section 13. Contractors may employ Journeymen Plumbers who are members in good standing with other United Association Unions with the exception of Sewage Disposal and Water Treatment Plants of which Local 93 and Local 597 share jurisdiction.

United Association members other than members of Local 93 working within the jurisdiction of Local 93 and employed by Contractors Signatory to this Agreement will pay to Local 93 travel card dues as set forth in the United Association Constitution unless waived by Local 93 and abide by all the terms and conditions of this Agreement. In addition all United Association members not members of Local 93 shall be paid not less than Local 93 wages and contributions.

Contributions paid to the Local 93 Health & Welfare Fund, Pension Fund and Retirement Fund will be reciprocated to the U.A. member's home local union. All other contributions will be retained by Local 93.

Section 14. All Employees who supervise and inspect work and/or who are in charge of any work that requires more than three (3) Journeymen and/or Apprentices shall be paid Foreman's scale. The Employer shall select said man, who shall at all times be subject to order from the Employer or his Superintendent. This section does not apply to repair work.

Section 14a. The Sub-foreman or Foreman rate of pay shall prevail for any Journeyman who is assuming full responsibility for any job when such responsibility is of a Supervisory nature in representing his Employer.

A Sub-foreman or Foreman shall represent his Employer on a project to the limit of authority prescribed and given to him by his Employer. Within that authority he shall perform the following duties as applicable for the orderly and efficient installation of the work:

1. Supervise and coordinate the work and activity of the men;

2. Plan and schedule the work including the necessary layout;

3. Coordinate his work with that of other trades in an orderly fashion;

4. Anticipate and arrange for the delivery of tools and materials without undue frequency;

5. Represent the Employer at job meetings and safety meetings and implement results consistent with the Employer's policy;

6. Reassign Employees for the best use of their abilities, when necessary;

7. Attempt to resolve grievances at an early stage;

8. Assemble and verify the time sheet in the form prescribed by the Employer;

9. Update as-built drawings and instructions for the maintenance of equipment and the operation of systems;

10. Keep job log and transmit to the Employer at conclusion of the work;

11. Stress safe working habits, and supplement activity in Article VI of this Agreement

A foreman may supervise Journeymen and/or Apprentices on more than one (1) building provided it is considered within the job site and covered by the same contract and Employer. If it is necessary for an Employee covered by this Agreement to supervise work on separate job sites covered by a separate contract, he shall be rated as a Superintendent.

Section 14b. The following schedule shall determine the supervision on all jobs:

| JOURNEYMEN & APPRENTICES | SUBFOREMAN | FOREMAN | SUPERINTENDENT |
| --- | --- | --- | --- |
| 4 TO 9 | 0 | 0 | 0 |
| 10 TO 18 | 1 | 1 | 0 |
| 19 TO 25 | 2 | 1 | 1 |
| 26 TO 35 | 2 | 1 | 1 |
| 36 TO 45 | 3 | 2 | 1 |

Section 15. The Employer hereby agrees to pay Journeymen covered by this agreement in accordance with Appendix II attached hereto. No

18

Employer shall be required to pay wages in excess of those set forth in Appendix II attached hereto.

Section 16. The Employer hereby agrees to pay Apprentices covered by this Agreement in accordance with Appendix II attached hereto.

Section 16a. The Employer hereby agrees to contributions to the designated Fringe Funds and Working Dues, a special administrative dues or work assessment for each Employee covered by this Agreement as set forth in Section 17 through Section 17-h and in accordance with Appendix II attached hereto.

Section 16b. The Employer shall be exempt from contributing for Probationary Apprentices to the Pension Fund, Retirement Fund and the Plumbing & Mechanical Contractors of Northern Illinois Industry Promotion Fund. The Employer shall be exempt from contributing for 2nd, 3rd, 4th and 5th year Apprentice to the Retirement Fund and the Plumbing & Mechanical Contractors of Northern Illinois Industry Promotion Fund. The Employer shall make Health & Welfare contributions for 2nd, 3rd, 4th and 5th year Apprentices at 75% of the Journeyman rate effective 6-1-05, 85% 6-1-06, and 100% 6-1-07. Health & Welfare contributions for Probationary Apprentices shall be $1.00 less than all other Apprentices.

Section 16c. Apprentices completing their required hours on the job and related classroom training shall be required to obtain their State of Illinois Journeymen Plumbing License before being entitled to Journeymen wages and benefits hereinafter set forth in Appendix II of this Agreement.

Section 16d. The Apprentice shall be required to sign a contract with the Union and the Joint Apprenticeship Committee that in the event the Apprentice should drop out of the Union and become and/or work for a Non-Union Contractor, for a period of five (5) years after reaching Journeyman status will be held personally liable for all costs associated with their Apprenticeship Training.

Section 16e. The following schedule shall determine the ratio of Apprentices to Journeymen:

19

| MAXIMUM APPRENTICE RATIO | | | | | | | |
|---|---|---|---|---|---|---|---|
| JOURNEYMEN | 2 | 3 | 4 | 8 | 10 | 12 | 15 |
| APPRENTICE OR PROBATIONARY | 1 | 1 | 2 | 4 | 5 | 6 | 7 |
| | 1 | 1 | 1 | 1 | 1 | 2 | 3 |

*For purposes of determining the maximum ratio the Working Contractor shall be counted as a Journeyman.

Section 16f. Contractors signatory to the Local 93 Collective Bargaining Agreement and who employ a minimum of two (2) Local 93 Journeymen Plumbers exclusively for service work (jobbing) my employ a Metal Tradesman who shall be restricted per the Metal Tradesman Addendum. Additional Metal Tradesman may be employed on a one (1) Metal Tradesman for each three (3) additional Journeymen Plumbers performing service work.

If no Metal Tradesmen are available thru the Referral Card Process, Metal Tradesmen may be solicited for employment by the Employer.

Employers shall, within seven (7) days of hiring a Metal Tradesman, give written notification to the Union of the individual's name, social security number, classification, employment date, and the number of Journeymen Plumbers, Apprentices and Metal Tradesmen employed at that time.

It is the employers' right to determine the entry level (1st Class, 2nd Class, 3rd Class, or M.T. Probationary) into the M.T. Program based on the qualifications of the individual.

The Probationary period shall be six (6) months. Within seven (7) days of the Probationary Period ending the Employer must:

(a) Notify the Union in writing that the M.T. Prob. has the skills necessary to become a Metal Trades Serviceman and will be referred to the Union for membership in the Metal Trades Program.

OR

(b) Notify the Union that the M.T. Prob. is being removed from employment.

(c) 1st Class, 2nd Class and 3rd Class Metal Tradesmen shall be referred to the Union within seven (7) days of their employment by the Employer.

Metal Trade Servicemen shall be required to remain Metal Trade Servicemen for a period of not less than three (3) years. After which they may request entrance into the Training Program in order to qualify for Journeyman Plumber status, as set forth in the Joint Apprenticeship Standards between the Union and Contractors.

Wages, Fringe Benefits and Working Dues shall continue to be paid at the Metal Trades Journeyman rate until certification of the Joint Apprenticeship Committee and attainment of the State of Illinois Journeyman Plumbing License for reclassification to Journeyman Plumber.

See Letter of Understanding "E"

Section 17. The Employer will contribute to the Pension Fund, Retirement Fund and the Health & Welfare Fund for each Employee covered by this Agreement in accordance with Appendix II attached hereto.

Section 17a. The Employer will contribute to the Apprentice Fund for each Employee covered by this Agreement in accordance with Appendix II attached hereto.

Section 17b. The Employer will contribute to the Industry Fund for each Employee covered by this Agreement in accordance with Appendix II attached hereto.

Section 17c. Contributions provided in Section 17, 17a, and 17b shall not be deducted from the wages of the Employees.

Section 17d. The Employer shall deduct from wages for Working Dues, Special Administrative Dues or Work Assessment for each Employee covered by this Agreement in accordance with Appendix II attached hereto.

Section 17e. All contributions or deductions provided for in this Agreement are due no later than the fifteenth (15th) day of the succeeding month. Any payments received after the fifteenth (15th) day of the succeeding month shall be assessed liquidated damages.

Section 17f. It is agreed between both parties to this Agreement that the parties will use all efforts to reaffirm and incorporate provisions to protect the integrity of the Trust Funds. It is agreed that these provisions will recognize the obligations under ERISA, and to facilitate the collection of fringe benefit contributions.

Section 17g. If discovered that prior contributions or deductions have not been in accordance with the terms of this Agreement, the Employer advised of the discrepancy shall remit that amount due plus the above prescribed penalty. The Employer may contest the findings as provided in Article IV of this Agreement. If then found that monies remain due and payable the Employer shall remit within thirty (30) days after the findings. Upon failure to remit monies due within thirty (30) days after the findings, the Employer shall be liable for liquidated damages.

Section 17h. Each Employer shall file with the Union on a form to be devised by the Union, on or before the fifteenth (15th) day of the month following, an itemization of the money payments required to be paid by the Employer during the preceding month under the Terms of this Agreement. The Union shall have the right to inspect the payroll records of the Employer for the purpose of determining whether the Employer is complying with the provisions of this Agreement relating to the contract rate of wages being paid to Employees. The Employer shall make such books and records available at reasonable business times and hours, at the option of the Union, either to a Business Representative of the Union or a representative of a certified public accountant designated by the Union. If Employees are withdrawn from any job in order to compel an Employer to make such books and records available, the Employees who are affected by such

22

stoppage of work shall be paid for lost time up to sixteen (16) hours provided that two days notice of the intention to remove Employees from a job has been given to the Employer by the Union by registered mail. Such withdrawal of Employees to compel an Employer to make his books and records available shall not be considered a violation of this Agreement on the part of the Union and it shall not be subject to arbitration.

Section 17i. The Employer agrees to be bound by this Agreement and Declaration of Trust establishing the Plumbers Local Union 93 Health & Welfare Fund, the Plumbers Local 93 Pension Fund, the Plumbers Local 93 Retirement Fund and by any present and future Amendments thereto and irrevocably designates as his representative on the Board of Trustees those as are named in said Agreement and Declaration of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trusts as may be amended from time to time, and agrees to be bound by all actions taken by said Employer Trustee pursuant to the said Agreement and Declaration of Trust as amended from time to time.

Section 18. Should any of the terms and conditions of this Agreement be found in violation of any Federal or State law, based on published court decisions or rulings of authorized governmental agencies, then such terms and conditions shall become void and ineffective immediately on written notice to this effect from one party to the other, and the parties hereto shall meet as soon as practicable thereafter to negotiate in good faith a legal and mutually acceptable substitute provision. No other portion, provision article of this Agreement shall be invalidated by the occurrence of any article of the foregoing, nor such adjudication relieve either of the parties hereto from their rights or obligations hereunder or limit their rights and obligations, except to the extent that any such right or obligation may have been held unlawful in the manner indicated above.

23

## SECTION VIII
## MAINTENANCE WORK

It is hereby understood and agreed that when Journeymen Plumbers are permanently employed as maintenance men in hotels, office buildings, hospitals, institutions and industrial plants, their work shall be confined exclusively to maintenance of piping and plumbing systems so that the existing system will function properly, and for general emergency work other than the above specified work shall be considered as work properly coming under the jurisdiction of the Contractor to this Agreement.

## ARTICLE IX

The terms and conditions of this Agreement shall apply to all covered work performed by Employees of signatory Employers in the geographic jurisdiction of the Union.

## ARTICLE X

This Agreement is effective as of June 1, 2005 and shall remain in full force and effect until May 31, 2008, inclusive and thereafter for successive yearly periods, unless at least sixty (60) days prior to the expiration of the initial period or any yearly period thereafter. Either party thereto shall give notice to the other of its intention to modify or terminate the Agreement.

## APPENDIX I
## WORK LIST

The following shall constitute the occupation jurisdiction of work for the Union.

1. All piping for plumbing, water waste, floor drains, drain grates supply leader, soil pipe, grease traps, sewage and vent lines

2. All piping for water filters, water softeners, water meters, and the setting of same.

3. All cold, hot, and circulating water lines, piping for sump pumps, ejectors, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances.

4. All water services from mains to buildings.

5. All water mains including branches and fire hydrants, etc., excepting where there is a 50-50 working agreement with Pipefitters Local 597 concerning water mains.

6. Gas piping for domestic and culinary purposes.

7. All down spouts and drainage areas.

8. Water storage tanks.

9. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and wash rooms, shower stalls, etc.

10. All bathrooms, toilets and shower room accessories, such as: Towel racks, Paper Holders, and other appurtenances.

11. All lawn sprinkler work, including piping, fitting and lawn sprinkler heads.

12. All sheet lead lining for x-ray rooms, fountains, swimming pools or shower stalls, tanks or vats or for roof flashing in connection with the Plumbing Industry.

13. All fire stand pipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose, cabinets and accessories when not connected to alarm systems.

14. All laying out and cutting of all holes, chases and channels, except when done with a jack-hammer. The setting and erection of bolts, inserts, stands, brackets, supports, sleeves, thimbles, hangers, etc., when used in connection with plumbing.

15. All acetylene and arc welding, brazing, lead burning, soldered, and wiped joints, caulked joints, or any other mode or method of making joints used in connection with the Plumbing Industry.

16. Layout, cutting, bending and fabricating of all pipe by whatever mode or method used in connection with the Plumbing Industry.

17. All methods of stress relieving of pipe joints made by every mode or method in connection with the Plumbing Industry.

18. Piping for sterilizing, deodorizing and all cleaning systems and laundries.

19. Piping herein specified means pipe made from metals, tile, glass, rubber, plastics, wood, or other kind of material or product manufactured into pipe, usable in the Plumbing Industry, regardless of sizes or shapes.

20. Piping in connection with central distribution filtration treatment stations, boosting stations, waste and sewerage plants, central chlorination and chemical treatment work where there is a 50-50 working agreement with Pipe fitters Local Union 597.

21. The handling and using of all tools and equipment that may be necessary for the erection and installation of all work and materials used in the Plumbing Industry.

22. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

23. The operation, maintenance, repairing, servicing, and dismantling of all work installed by Journeymen under this Agreement.

24. Piping for cataracts, cascades, i.e., (artificial waterfalls, make-up fountains, captured waters, water towers).

26

27

# APPENDIX II
# WAGE & FRINGES

Section 1. The Employer hereby agrees to employ Journeymen Plumbers at the Local 93 prevailing wage. The rates, hereinafter set forth shall be deemed to be the standard rate to be strictly adhered to.

Section 2. The Employer hereby agrees to pay Sub-foreman, Foreman and Superintendents the rates hereinafter set forth. General Superintendents shall be paid at least six percent (6%) above the Superintendent wage rate per hour.

Section 2a. Continuing Education: Journeyman members of Plumbers Local 93 shall be offered yearly training in addition to the hours required by the State of Illinois for renewal of the plumbing license. Members satisfactorily completing not less than 8 hours per year will receive a $0.10 per hour yearly incremental training increase. All qualifying training courses shall be jointly agreed upon.

Section 2b. Probationary Apprentice
This Employee shall be paid at forty percent (40%) of Journeymen wages for the first six (6) month period and forty-five percent (45%) of Journeymen wages for the second six (6) month period, and will remain probationary until he achieves a minimum of two hundred and eighty-eight hours (288) of classroom training and seventeen hundred hours (1700) of field experience. The Joint Apprenticeship Committee will, at that time, make the determination whether the Probationary Apprentice will be advanced to 2ⁿᵈ Year Apprentice; or employment is to be terminated.

Section 2c. The Employer hereby agrees to pay other Apprentice Plumbers at the Local 93 prevailing wages as set forth in the chart that follows:

| | |
|---|---|
| 2ⁿᵈ Year | 50% of Journeymen Rate |
| 3ʳᵈ Year | 60% of Journeymen Rate |
| 4ᵗʰ Year | 70% of Journeymen Rate |
| 5ᵗʰ Year | 85% of Journeymen Rate |

Section 2d. 1ˢᵗ and 2ⁿᵈ year Apprentices, admitted after 6-1-06, shall attend school during the regular work week (approximately Labor Day through Memorial Day) and be compensated by his Employer for eight (8) hours of wages while attending class.

28

Section 3. The Employer shall contribute for each Journeyman and Apprentice to the Plumbers Local 93 Health & Welfare Fund; the Plumbers Local 93 Pension Fund; the Plumbers Local 93 Retirement Fund; the Joint Apprenticeship Committee Fund of the Plumbing & Heating Industry of Lake and McHenry Counties and the Plumbing & Mechanical Contractors of Northern Illinois Industry Promotion Fund, an Illinois not-for-profit corporation as set forth in Article VII, Section 17 through Section 17h of the Agreement.

Section 3a. The contributions provided under Section 17 shall not be deducted from the wages of the Employee and shall be paid on all hours worked for each Journeyman or Apprentice as set forth in Article VII, Section 16a.

Section 4. Working Dues. The Contractor shall withhold working dues from the Journeyman and Apprentice gross wages not to exceed thirty-two (32) hours per week as set forth in Article VII, Section 16a, and as set forth on the appropriate reporting form. The working dues shall be retained by the Contractor and be submitted no later than the fifteenth (15ᵗʰ) day of the following month. Hours worked and the amount of working dues withheld from Journeymen and Apprentice members of Plumbers Local Union 93 U.A., will be listed on the Union contribution form and submitted along with contributions to the Pension Fund, Retirement Fund, Welfare Fund, Apprenticeship Fund and Plumbing & Mechanical Contractors of Northern Illinois Industry Promotion Fund to the office designated on the form with a separate check for working dues made payable to Plumbers Local Union 93 U.A.

Section 5. Both parties to this Agreement, recognizing that the construction industry must be responsive to its market place, agree that should this Agreement be reopened on May 31, 2008 and any succeeding year for the purpose of negotiating wage increases or decreases only and the respective bargaining parties cannot reach a mutual agreement as to increased or decreased wage rates truly reflecting current area economic conditions, the Union and Contractors Association will, in the interest of public economy continue to work together without strikes and/or lockouts.

In the event of this occurrence, the parties shall then notify the Federal Mediation Service of the impasse and request that they assign a Mediator who will hear arguments and accept position statements from both parties. Each party shall then place their best and final offer in a sealed envelope and present their offer to the Mediator. The Mediator shall consider all supporting materials submitted and select the best and final

29

offer, which, in his opinion, most fairly represents and is supported by the information submitted. The Mediator is not authorized, nor shall he in any way attempt to alter or change either final offer.*

*It is recognized by the parties to this Agreement that the Impasses Settlement Provision set forth above is untried and may be undesirable. Accordingly, it is understood and agreed that any time after the first use of the Impasse Settlement Provision, the Provision may be removed from this Agreement at the request of either Party to the Agreement.

The Wages and other benefit to be paid under the terms of this Agreement until May 31, 2008 are set forth in the schedules found on the following pages:

### EFFECTIVE 6-1-05 TO 11-30-05

|  | Wage | H&W | Pension | Retire | Train | Ind |
|---|---|---|---|---|---|---|
| Journeyman | 36.00 | 7.25 | 2.75 | 2.75 | .39 | .23 |
| Sub-Foreman | 37.00 | 7.25 | 2.75 | 2.75 | .39 | .23 |
| Foreman | 38.00 | 7.25 | 2.75 | 2.75 | .39 | .23 |
| Superint | 39.50 | 7.25 | 2.75 | 2.75 | .39 | .23 |
| Gen Super | Super + 6% | 7.25 | 2.75 | 2.75 | .39 | .23 |
| Apprentice | | | | | | |
| 1st 6 months | 14.40 | 4.44 | N/A | N/A | .39 | N/A |
| 2nd 6 months | 16.20 | 4.44 | N/A | N/A | .39 | N/A |
| 2nd Year | 18.00 | 5.44 | N/A | N/A | .39 | N/A |
| 3rd Year | 21.60 | 5.44 | N/A | N/A | .39 | N/A |
| 4th Year | 25.20 | 5.44 | N/A | N/A | .39 | N/A |
| 5th Year | 30.60 | 5.44 | N/A | N/A | .39 | .23 |

### EFFECTIVE 12-1-05 TO 5-31-06

|  | Wage | H&W | HRA | Pension | Retire | Train | Ind |
|---|---|---|---|---|---|---|---|
| Journeyman | 36.00 | 7.29 | 1.00 | 2.85 | 2.85 | .40 | .23 |
| Sub-Foreman | 37.00 | 7.29 | 1.00 | 2.85 | 2.85 | .40 | .23 |
| Foreman | 38.00 | 7.29 | 1.00 | 2.85 | 2.85 | .40 | .23 |
| Superint | 39.50 | 7.29 | 1.00 | 2.85 | 2.85 | .40 | .23 |
| Gen Super | Super + 6% | 7.29 | 1.00 | 2.85 | 2.85 | .40 | .23 |
| Apprentice | | | | | | | |
| 1st 6 months | 14.40 | 4.48 | .50 | N/A | N/A | .40 | N/A |
| 2nd 6 months | 16.20 | 4.48 | .50 | N/A | N/A | .40 | N/A |
| 2nd Year | 18.00 | 5.48 | .50 | N/A | N/A | .40 | N/A |
| 3rd Year | 21.60 | 5.48 | .50 | N/A | N/A | .40 | N/A |
| 4th Year | 25.20 | 5.48 | .50 | N/A | N/A | .40 | N/A |
| 5th Year | 30.60 | 5.48 | .50 | N/A | N/A | .40 | .23 |

$3.40 to be distributed

6-1-06 TO 5-31-07

6-1-07 TO 5-31-08

$3.40 to be distributed

– A –
LETTER OF UNDERSTANDING
WORKING CONTRACTORS

The Business Manager/Financial Secretary and Executive Officers of the Union agree that in the event the Association finds that the provisions in the proposed Working Agreement, to take effect June 1, 2005 through May 31, 2008, allowing Contractors to work with the tools and pay into and receive insurance benefits under the provisions established by the Trustees of the Health & Welfare Fund proves to become detrimental to the Association and Non-Working Contractors, the Union will allow the Working Agreement to be amended which will disallow the Working Contractor from being signatory to the Union. The Union further agrees to inform any Working Contractor before becoming signatory to the Union Agreement of the Union's obligation to terminate and disallow the provision providing for Working Contractors if so required by the Association.

JOURNEYMEN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

32

---

On November 17, 2005 the Trustees of the Health & Welfare Fund and the Pension Fund voted to remove Letter of Understanding "B" from the Working Agreement. As of December 1, 2005 Fringe Benefits shall be paid on all hours worked.

– B –
LETTER OF UNDERSTANDING
SHOP TIME – SHOW UP TIME – TRAVEL TIME

The Association, the Union and the Trustees of the Health, Welfare and Pension Funds agree that payment of Fringe benefits will not be required under the proposed Working Agreement to take effect June 1, 2005 through May 31, 2010 for Shop Time, Show-Up Time and/or Travel Time.

The Association, the Union and the Trustees of the Health, Welfare and Pension Funds further agree that in the event it is found to be detrimental to the Fringe Benefit Funds, the Trustees of the Health Welfare and/or Pension Funds may at their sole discretion amend the Working Agreement and require payment of Fringe Benefit Funds for Shop Time, Show-Up Time and/or Travel Time. The Union further recognizes and agrees that Shop Time is not a part of this or any past Agreements between the Union and the Association but is rather a past practice between some Contractors and their Employees; thereby the Contractor may or may not pay Shop Time at his sole discretion with no obligation under the Working Agreement.

JOURNEYMEN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

PLUMBERS LOCAL UNION 93 U.A. HEALTH, WELFARE AND PENSION FUND
BY: Dan Mahoney
Chairman

Richard Flament
Secretary

33

- E -

## LETTER OF UNDERSTANDING
## METAL TRADESMAN

The Union and Contractors parties to this working agreement shall establish a Metal Tradesman classification as set forth in Article VII, Section 16f.

Strict adherence to the work to be performed by a Metal Tradesman shall be in the obligation of the Employer. (See Metal Tradesman Addendum).

Violation of Article VII, Section 16f shall require the Employer to pay a fine equal to Journeyman wages and fringes for hours worked while employed as a Metal Tradesman and further deny the Employer the right to continue to employ Metal Tradesmen for a period of a minimum of six (6) months or longer, subject to review by the Joint Arbitration Board.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

34

---

- F -

## LETTER OF UNDERSTANDING
## SERVICE WORKDAY

In the interest of both parties to the Collective Bargaining Agreement (C.B.A.) a "Grace Period" is hereby established and made a part of the C.B.A. This Grace Period shall apply only to employees whose main duties are in the service and repair field.

When an employee starts a service/repair job at least one hour prior to the end of his regular workday and that service/repair job extends past the regular workday a maximum grace period of one hour, paid at straight time, may be worked in order to return the plumbing system to working order. Hours worked after the grace period shall be paid at one and one half times the base rate.

Should either party to the C.B.A. find this letter to become a detriment to its members, upon 30 days notice by either party this letter shall be removed from the C.B.A.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

35

- G –

## LETTER OF UNDERSTANDING
## MONDAY THROUGH SUNDAY WORK WEEK

The Union recognizes that institutions such as office complexes, hospitals and manufacturing plants may require plumbing work to be performed on a continuing basis that would be disruptive during the normal work week for the institution's regularly scheduled employee's work activities.

The Union also recognizes that Union members are non-receptive to working nights and/or weekends, which separates them from the normal time spent with their families and friends. Recognizing the aforementioned reluctance of Union Members and the institutions cost factors involved by curtailment of their employees regularly scheduled work activities, the Union will not object to any incentives agreed to between the Union member, the Employer and the institutions where the work is to be performed, but the incentives shall not be adopted within the scope of the working agreement between the Union and the Employers including arbitration.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

36

- H –

## LETTER OF UNDERSTANDING
## BACKING AND ACCESSORIES

It is recognized by the parties to this agreement that the Backing and Accessories (Appendix 1, #10) related to Plumbing fixtures are the rightful work of the plumber.

Therefore, the June 29, 1965 Agreement between the United Association and the United Brotherhood of Carpenters is included into the C.B.A. and accepted as a bona fide agreement

BACKING AND ACCESSORIES                    June 29, 1965
BACKING

1. The installation of all backing for plumbing fixtures and their accessories not affecting the structure shall be the work of the United Association.

2. Cutting and chasing which does not affect the structure shall be the work of the United Association.

3. The installation of all backing for plumbing fixtures and their accessories, which affects the structure, shall be the work of the Carpenters.

4. Cutting and chasing which affects the structure shall be the work of the Carpenters.

ACCESSORIES

1. Accessories which are directly related to plumbing fixtures such as grab bars, paper holders, towel racks and bars, utility shelves, sanitary paper holders, glass, cup, soap holders, soap dispensers, sanitary napkin dispensers and disposals, combination towel dispenser and disposals, shall be the work of the United Association.

2. Accessories which are not directly related to plumbing fixtures such as laundry chutes, hampers, clothes hooks and lines, medicine cabinets, magazine racks, storage cabinets, cabinet shelves shall be the work of the Carpenters.

37

For the United Brotherhood of Carpenters and Joiners of America.

/s/ M. A. HUTCHESON
General President

/s/ R. E. LIVINGSTON

/s/ LEON W. GREENE

/s/ RALEIGH RAJOPPI

/s/ PATRICK A. HOGAN

/s/ W. E. McDANIELS
Committee

For the United Association of Journeymen and Apprentices of The Plumbing and Pipe Fitting Industry of the United States and Canada

/s/ PETER T. SCHOEMAN
General President

/s/ FRANK J. LUCAS

/s/ THOMAS J. DUGAN

/s/ JOSEPH F. PERRY

/s/ MACK C. ROBERTS

/s/ DAN D. ESCOBAR
Committee

38

- I -

## LETTER OF UNDERSTANDING
## CLEAN CARD POLICY

The Local 93 Clean Card Policy is the accepted substance abuse policy and shall be a part of the Collective Bargaining Agreement in place from 6-1-05 to 5-31-08.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

- J -

## LETTER OF UNDERSTANDING
## EDUCATION COMMITTEE

The Union and Association agree to form an Education Committee in order to implement courses for the continuing education of Local 93 members.    Local 93 Contractors and their families.    Expenses to be shared evenly by the Union, the Association and the J.A.C.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY: Richard Flament
Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION OF LAKE AND McHENRY COUNTIES

BY: David Ariano
President

39

– K –

LETTER OF UNDERSTANDING
SERVICE / REPAIR TRAINING

Employers wishing to pursue or offer in-house training for the service/repair industry will be reimbursed up to $160.00 a year per employee from the J.A.C. The rate of reimbursements will be based at $0.10 per contribution hour for the employee being trained.

The Education Committee will be responsible for approving the training and the reimbursement level.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY:  Richard Flament
      Business Manager/Financial Secretary

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION
OF LAKE AND McHENRY COUNTIES

BY:  David Ariano
      President

40

IN WITNESS WHEREOF, the Contractor has caused this instrument and all Letters of Understanding contained heretofore to be signed by its President and attested by its Secretary and the Union has caused this instrument to be signed by its Business Manager and attested by its Secretary and its seal affixed thereto, this 1st day of June, 2005.

JOURNEYMAN PLUMBERS LOCAL 93 U.A. OF LAKE AND McHENRY COUNTIES

BY:  Richard Flament
      Business Manager/Financial Secretary

NEGOTIATING COMMITTEE:

Gary Glander
Lynn Karner
Scott Spangle
Pete Olson

PLUMBING, HEATING, COOLING CONTRACTORS ASSOCIATION
OF LAKE AND McHENRY COUNTIES

BY:  David Ariano
      President

NEGOTIATING COMMITTEE:

Allan Jensen
Daniel Mahoney
David Kerrigan
Yale Smith

41

JUDGE LEFKOW
MAGISTRATE JUDGE SCHENKIER
EDA

## Mannion Plumbing

| Period | Hours | H & W $9.04 | Pension $3.85 | Retirement $4.40 | Training $0.40 | Industry $0.23 | Total Funds | Working Dues | Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 1.2008 | 153.00 | $1,383.12 | $589.05 | $673.20 | $61.20 | $35.19 | $2,741.76 | $0.00 | $2,741.76 |
| 12.2007 | 164.75 | $1,489.34 | $634.29 | $724.90 | $65.90 | $37.89 | $2,952.32 | $0.00 | $2,952.32 |
| 11.2007 | 157.75 | $1,426.06 | $607.34 | $694.10 | $63.10 | $36.28 | $2,826.88 | $0.00 | $2,826.88 |
| 10.207 | 195.00 | $1,762.80 | $750.75 | $858.00 | $78.00 | $44.85 | $3,494.40 | $0.00 | $3,494.40 |
| 9.2007 | 160.00 | $1,446.40 | $616.00 | $704.00 | $64.00 | $36.80 | $2,867.20 | $0.00 | $2,867.20 |
| Total | | $7,507.72 | $3,197.43 | $3,654.20 | $332.20 | $191.02 | $14,882.56 | $0.00 | $14,882.56 |

| | Total Due |
|---|---|
| Late Charges 10% | $1,488.26 |
| Late Charges 10% - on payments made late | $783.72 |
| Interest | $900.88 |
| Interest - on payments made late | $251.40 |
| **Total Due** | **$18,306.82** |

### Late Payments received

| | Amount | Paid | Late Charge | Interest |
|---|---|---|---|---|
| 8.2007 | $2,883.84 | 3.2008 | $288.38 | $201.87 |
| 2.2008 | $3,027.20 | 4.2008 | $302.72 | $30.27 |
| 3.2008 | $1,926.17 | 5.2008 | $192.62 | $19.26 |
| Total | | | $783.72 | $251.40 |



EXHIBIT
3

**Interest Calculation**

| | | # Months | 1% per month | Interest |
|---|---|---|---|---|
| 1.2008 | $2,741.76 | 4 | | $109.67 |
| 12.2007 | $2,952.32 | 5 | | $147.62 |
| 11.2007 | $2,826.88 | 6 | | $169.61 |
| 10.2007 | $3,494.40 | 7 | | $244.61 |
| 9.2007 | $2,867.20 | 8 | | $229.38 |
| | $14,882.56 | | Total Interest | $900.88 |